IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.   CASE NO. 1:94-cr-1004-MP-AK

THOMAS FRANKLIN WOODY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This cause is before the Court on Defendant's motion to vacate. Doc. 51. The Government has filed its response, Doc. 58, and Defendant has filed a reply. Doc. 60. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be denied as untimely.

On January 12, 1994, Defendant was indicted in this case for one count of bank robbery. Doc. 1. At that time, he was in state custody, and shortly after his indictment here, began serving a two and one-half year prison sentence in the Florida Department of Corrections. Doc. 3. *See also* Doc. 51, Attach.; www.dc.state.fl.us/InmateReleases. He subsequently pled guilty to the Indictment in this case, Doc. 20, and, on July 29, 1994, was sentenced to 140 months imprisonment to run concurrently with the sentences in 1:94cr1022 and 1:94cr1027, which involved other bank robberies. Docs. 29 & 30.

Defendant appealed, and the Eleventh Circuit affirmed. Doc. 42. The date of the

mandate is October 26, 1995.[1]  For the sake of argument, Defendant's sentence became final ninety days thereafter, January 24, 1996.  Because that date is before the April 24, 1996, effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the one-year period for seeking § 2255 relief ran from the date of enactment of the AEDPA.  *Wilcox v. Florida Department of Corrections*, 158 F.3d 1209, 1211 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Defendant therefore had one year from that date to file his motion to vacate in this Court pursuant to § 2255(f)(1).

Shortly before the commencement of this one-year period, on or about March 5, 1996, Defendant filed a motion in the Circuit Court of Hillsborough County, Florida, to "define or clarify sentence."  Doc. 58, Ex. 1.  According to that motion, Defendant had completed the two and one-half year sentence in state custody only two days before his August 3, 1995, sentencing on the three cases before the Hillsborough County court, and he sought clarification as to whether his new state court sentences "would be run concurrent with my already impending Federal sentence in the Bureau of Prisons...."  *Id*.; *see also* Doc. 51, Attach.  On May 3, 1996, just days after the one-year statute of limitations began running in this Court, the state court denied the motion, finding that the three new state court sentences "were to run concurrent only as to one another," not with the "federal sentence he is serving."  Doc. 58, Ex. 2.  There is no indication that Defendant appealed that ruling.

---

[1] The electronic file of this case does not include a scan of the opinion, and the Court has no immediate access to the hard file to determine the actual date of the opinion, which is the pertinent date for determining the date of finality under § 2255(f)(1).  The date of the mandate gives Defendant a more generous time frame, and thus, the Court will look to that date instead for determining the date of finality.

*Case No: 1:94-cr-1004-MP-AK*

Between April, 1996, and April, 1997, Defendant took no action in this Court whatsoever. Then, on December 29, 1997, Defendant sent this Court a letter "ask[ing] it to calculate defendant's sentence to begin the date of July 29, 1994,"[2] the date that sentence was imposed in this case. Doc. 60. The Court did not act upon this letter, and Defendant took no other action in this Court until April 13, 2004, almost eight years after the judgment of conviction became final. At that time, he filed a motion to clarify the commencement date of his sentence and to receive credit for time served in custody before sentencing.[3] Doc. 45. The Court denied the motion as moot, in light of its letter to the Bureau of Prisons "clarifying that the Defendant's federal sentence was meant to run consecutively to his state sentence, thereby setting the date he entered into exclusive federal custody, November 26, 1997, as the date his sentence commenced." Doc. 46. Defendant sought reconsideration of this order, Doc. 49, which was summarily denied. Doc. 50.

On or about December 9, 2004, Petitioner filed a § 2241 petition for writ of habeas corpus in the United States District Court for the Eastern District of Michigan, where Defendant was confined at the time. After an appeal to the United States Court of Appeals for the Sixth Circuit, the instant motion was transferred to this Court in August, 2006, after Defendant agreed

---

[2]The Court does not have a copy of this letter. However, based on Defendant's representations as to the contents of the letter and the Government's elaboration thereon, *see* Doc. 58 at 7, the Court assumes this is the letter filed as Document 43, which the Court cannot view for the reasons stated *supra* n.1.

[3]Though the Clerk did not file this motion until May 3, 2004, it is deemed filed when deposited in the prison mail, which was April 13, 2004. *See Houston v. Lack*, 487 U.S. 266 (1988) (pursuant to "mailbox rule," date that petition was deposited with prison is controlling filing date, not actual date document was filed in court).

to re-characterizing the action as a § 2255 motion.

Defendant now claims that the motion to vacate is timely because "prior to June 23, 2004, [the date of the Court's order regarding the motion for clarification] there were no facts or documentation as to the word or the phrase consecutive written on any document from any court stating that the federal sentence was to be or had been consecutive to any state sentence." Doc. 60 (emphasis omitted). In other words, the Court should look not to § 2255(f)(1) but to § 2255(f)(4), the "date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence,"[4] to determine whether the instant motion is timely. This was the route which the Sixth Circuit pointed out to Defendant: "The facts pertinent to Woody's claim that the Florida district court could not alter his sentence ten years after entering it were not known until June 17, 2004, the date Judge Paul wrote his letter to the BOP clarifying Woody's sentence, at the earliest." Doc. 51, Attach.

With that in mind, the Court turns to *Aron v. United States*, 291 F.3d 708, 711 (11th Cir. 2002). In *Aron*, the Eleventh Circuit addressed what had previously been § 2255(4) and is now § 2255(f)(4) and found that the limitations period which Defendant now presses "begins to run when the facts *could have been* discovered through the exercise of due diligence, not when they were *actually* discovered." *Aron*, 291 F.3d at 711 (emphasis in original). Thus, the "beginning of the one-year period is triggered by a date that is not necessarily related to a [defendant's] actual efforts or actual discovery of the relevant facts." *Id*. The pertinent timeliness inquiry

---

[4]The various paragraphs of § 2255 were finally lettered and numbered in 2008, where previously there had been no definitive way to reference the statute of limitations paragraph. In effecting these clarifications, however, there was no substantive change in the relevant time periods.

begins with "determining whether the [defendant] exercised due diligence because...if he did so, the limitation period would not begin to run before the date he actually discovered the facts supporting the claim." *Id*. "It is only if [Defendant] did not exercise due diligence that [the Court is] required to speculate about the date on which the facts could have been discovered with the exercise of due diligence." *Id*. at 711 n.1.

In determining due diligence, a defendant is not required to use "the maximum feasible diligence, but only 'due,' or reasonable, diligence." *Id*. at 712. "Due diligence therefore does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts." *Id*. The due diligence inquiry is "an individualized one that 'must take into account the conditions of confinement and the reality of the prison system.'" *Id*. (citation omitted).

Thus, the initial question in this case is whether instant Defendant made "reasonable efforts" to determine the commencement date of his federal sentence. Having carefully considered the matter, the Court finds that he did not. Defendant was released from state custody on November 26, 1997. *See* www.dc.state.fl.us/InmateReleases. By his own admission, he began seeking clarification from this Court on the issue regarding the relationship between his state and federal sentences in December, 1997, when he asked the Court to set the commencement date for his federal sentence as July, 1994. Defendant's representation of the contents of this letter to the Court clearly indicates that, at the very least, he suspected that the BOP was going to use 1997, not 1994, as the commencement date of his federal sentence. When he did not receive a response to his letter, he took no further steps to bring the issue to the Court's attention in the proper manner, i.e., by motion, as he later did in 2004. That seven-year

gap shows conclusively that Defendant did not act with due diligence in pursuing this issue. Once Defendant did file a motion regarding the commencement date of his federal sentence, the Court immediately ruled on it, which plainly shows that one motion, as opposed to an informal letter, was all it would have taken to get the information.

Because Defendant did not exercise due diligence, the Court must now "speculate about the date on which the facts could have been discovered with the exercise of due diligence." *Aron* at 711 n.1. The one-year statute of limitations will then run from that date. After carefully considering the matter, the Court has no hesitation in finding that Defendant certainly could have properly requested a clarification of the commencement date of his federal sentence long before he filed the motion for clarification in 2004. This conclusion is supported by the Court's prompt ruling on the matter. While Petitioner hypothetically could have made the motion very soon after he pled guilty and was sentenced, such extraordinary efforts are not required, and the Court does not believe it is reasonable to set the discovery date that early. It is, however, reasonable to set the discovery date at a date following his final release from state custody in November, 1997, since, as the Court has discussed *supra*, he apparently thought the commencement date of his federal sentence was an issue or there would have been no reason for the December, 1997, letter to the Court. Even if the Court allows for a time of transition from state to federal custody, the judgment in this case was executed on May 14, 1998, and there is no doubt that shortly after his receipt at USP Atlanta, Defendant would have met with BOP personnel who would have assigned him an initial custody classification, provided him with critical paperwork, and advised him of a projected release date, a date which would necessarily have hinged on the date that his federal sentence commenced. In a more generous vein, if the Court gives Defendant an

allowance of twelve months from his receipt at USP Atlanta to have made the necessary inquiries of his BOP case manager and this Court, Defendant could have had all the necessary information for challenging the commencement date via a motion to vacate no later than May 14, 1999, if he had exercised due diligence.  From that date, he would have had one year to seek § 2255 relief in this Court.  Because Defendant took no action until 2004, the instant motion to vacate is untimely under subsection (f)(4).

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion to vacate, Doc. 51, be **DENIED WITH PREJUDICE as untimely**.

**IN CHAMBERS** at Gainesville, Florida, this   6th    day of May, 2008.

 S/A. Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**